IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| SANTANDER CONSUMER USA | : | |
| INC., as assignee of Thor Credit Corp., | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | No. 5:13-CV-68 (CAR) |
| PHILLIP JEFFERSON BROWN, | : | Bankruptcy Appeal |
| | : | |
| Appellee. | : | |
| | : | |

## ORDER ON APPEAL

Before the Court is an appeal from the decision of the United States Bankruptcy Court for the Middle District of Georgia, Macon Division.  On appeal, Appellant-Creditor Santander Consumer USA Inc., as assignee of Thor Credit Corp., contends that the Bankruptcy Court erred in concluding that 11 U.S.C. § 506(a) applied to the valuation of a non-910 vehicle upon Appellee-Debtor Phillip Jefferson Brown's voluntary surrender of the vehicle pursuant to 11 U.S.C. § 1325(a)(5)(C).  Having considered the record of the lower court, the briefs filed by both parties, and the relevant case law, the Court agrees with the findings and conclusions of the United States Bankruptcy Court.  Accordingly, the decision of the Bankruptcy Court is **HEREBY AFFIRMED**.

I. Background

On July 28, 2007, Appellee-Debtor purchased a 37-foot, 2006 Keystone 345-S RV (the "RV") from Midstate RV Center.[1] On July 16, 2012, more than 910 days after purchasing and financing the RV, Appellee filed for bankruptcy.[2] Appellant-Creditor asserts a claim in the amount of $36,587.33, secured by a first lien on Appellee's RV.[3]

Appellee's initial Chapter 13 plan provided for surrender of the RV to Appellant.[4] Accordingly, on August 6, 2012, Appellant filed a motion for relief from the stay seeking to repossess the RV and to exercise its other remedies consistent with the plan.[5] The parties subsequently entered a consent order docketed on September 4, 2012, granting Appellant relief from the stay and authorization "to recover and dispose of the [RV] in accordance with state law."[6] The order did "not prejudice [Appellee's] right to modify the Plan to provide for surrender of the [RV] to [Appellant] in full satisfaction of the debt."[7] Consistent with this provision, Appellee filed a modified plan, that proposed to surrender the RV in "full satisfaction of [Appellant's] claim."[8]

---

[1] Security Agreement, Doc. 18-1 [Doc. 1-1 at 58].
[2] Ch. 13 Voluntary Petition, Doc. 1 [Doc. 1-1 at 21].
[3] *Id.* [Doc. 1-1 at 9].
[4] Initial Ch. 13 Plan, Doc. 2 [Doc. 1-1 at 51].
[5] Mtn. for Relief from Stay, Doc. 18 [Doc. 1-1 at 55].
[6] Consent Order, Doc. 21 [Doc. 1-1 at 67]. Appellee thereafter surrendered the RV to Appellant.
[7] *Id.*
[8] Mod. Ch. 13 Plan, Doc. 20 [Doc. 1-1 at 63].

Appellant objected to confirmation of Appellee's proposed modified plan on grounds that the plan did not comply with 11 U.S.C. § 1325(a)(5)(C).[9] Specifically, Appellant contended that Appellee could not surrender the RV in full satisfaction.[10] Rather, Appellant contended that it had the right to sell the RV pursuant to state law and the security agreement, apply the proceeds of the sale to the debt, and then assert an unsecured deficiency claim for any balance remaining.[11]

In its order, the Bankruptcy Court overruled Appellant's objection to hold that Appellee "can use § 506(a) to value the RV and require the creditor to recognize the value upon surrender of the RV under § 1352(a)(5)(C)."[12] The court further concluded that the proper standard of value to be applied to the surrendered RV was the replacement value as of the date of the filing of the petition.[13] In the instant appeal, Appellant challenges the court's decision to value the RV under § 506(a).[14]

---

[9] Obj. to Conf. of Mod. Ch. 13 Plan, Doc. 23 [Doc. 1-1 at 68-71]; Brief in Support, Doc. 26 [Doc. 1-1 at 76].
[10] Obj. to Conf. Mod. Ch. 13 Plan, Doc. 23 [Doc. 1-1 at 68-71]; Brief in Support, Doc. 26 [Doc. 1-1 at 76].
[11] Obj. to Conf. Mod. Ch. 13 Plan, Doc. 23 [Doc. 1-1 at 68-71]; Brief in Support, Doc. 26 [Doc. 1-1 at 76].
[12] *In re Brown*, No. 12-51926-JPS, 2012 WL 6021469, at *5 (M.D. Ga. Dec. 4, 2012) [Doc. 1-1 at 109].
[13] *Id.*
[14] In its Reply, Appellant argues, for the first time, that even if § 506(a) does apply, the lower court erred in finding that the replacement value was the proper standard of value. Reply Br. at 2 [Doc. 6]. However, as the Eleventh Circuit "ha[s] repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quotations omitted). Notwithstanding, because the Court concludes below that § 506(a) is applicable to the valuation of a non-910 surrendered vehicle, replacement value is the proper standard of value for the RV pursuant to § 506(a)(2).

## II. Legal Standard

"In reviewing bankruptcy court judgments, a district court functions as an appellate court."[15]  This Court "reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous."[16]  The instant appeal involves only the Bankruptcy Court's conclusions of law.  There are no facts in dispute, nor did the court make any findings of fact that are clearly erroneous.  Consequently, the only applicable standard of review is *de novo*.

## III. Discussion

Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumers and business proprietors with small debts.[17]  Bankruptcy courts are obligated to review Chapter 13 plans for compliance with the Code.[18]  Before a bankruptcy court can confirm a Chapter 13 plan, it must ensure that the plan complies with the requirements set forth in 11 U.S.C. § 1325(a).[19]  Pursuant to § 1325(a), "the plan's treatment of an 'allowed secured claim' will be confirmed if (1) the creditor accepts the plan [§ 1325(a)(5)(A)]; (2) the debtor retains the property and makes payments on the claim [§ 1325(a)(5)(B)]; or (3) the debtor surrenders the property to the creditor [§ 1325(a)(5)(C)]."[20]

---

[15] *In re JLJ, Inc.*, 988 F.2d 1112, 1113 (11th Cir. 1993).
[16] *Id.*
[17] *DaimlerChrysler Fin. Servs. Ams. LLC v. Barrett (In re Barrett)*, 543 F.3d 1239, 1242 (11th Cir. 2008).
[18] *Id.*
[19] *Id.*
[20] *Id.* (quoting 11 U.S.C. § 1325(a)).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[21] changed, in part, the way certain secured claims are handled by a debtor. Under pre-BAPCPA law, if a Chapter 13 debtor retained the property under § 1325(a)(5)(B), "the debtor would be allowed to keep the collateral over objection of the creditor and satisfy the debt by making monthly payments equal to its present market value instead of the remaining balance of the loan."[22]  This is commonly known as "cram-down."[23]  If, however, a debtor surrendered the property under § 1325(a)(5)(C), "the creditor could pursue an unsecured deficiency claim if it had a right to collect a deficiency under applicable nonbankruptcy law."[24]  "That deficiency [was] considered an unsecured claim under § 506(a)."[25]

Pre-BAPCPA § 506(a) bifurcated secured claims into unsecured and secured portions based on the value of the collateral, without regard for when such collateral was purchased.[26]  Although pre-BAPCPA § 1325(a)(5)(B) (retention) and pre-BAPCPA §

---

[21] Pub. L. 109-8, 119 Stat. 23 (April 20, 2005).
[22] *In re Barrett*, 543 F.3d at 1242 (citing *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997)).
[23] *Id.* "It is called 'cram-down' because … the bankruptcy court in effect 'crams down the creditor's throat the substitution of money for the collateral, a situation that creditors usually oppose because the court may underestimate the collateral's market value and the appropriate interest rate, and the debtor may fail to make all promised payments, so that the payment stream falls short of the collateral's full value.'" *Id.* at 1242 n.2 (quoting *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007)).
[24] *Id.* at 1242 (citing *Rash*, 520 U.S. at 957).
[25] *In re Miller*, 570 F.3d 638, 636 (5th Cir. 2009).
[26] 11 U.S.C. § 506 (2004); *In re Brown*, 346 B.R. 868, 872 (N.D. Fla. 2006).

1325(a)(5)(C) (surrender) provided different remedies and were mutually exclusive, both relied upon pre-BAPCPA § 506(a) to bifurcate a creditor's claim.[27]

The subsequent enactment of BAPCPA changed the foregoing with respect to some claims by distinguishing between "910 vehicles," or vehicles that had been purchased within 910 days of filing for bankruptcy, and "non-910 vehicles," or those vehicles that had been purchased more than 910 is known by federal courts as a "hanging paragraph."[28] In general, courts have interpreted the hanging paragraph to render the valuation provision of § 506(a) inapplicable to a 910 vehicle claim.[29] Specifically, when a debtor retains a 910 vehicle, the debtor "must now pay the entire claim and [the claim] is to be treated as fully secured."[30] When a debtor surrenders a 910 vehicle, the creditor may pursue a deficiency claim governed by the parties' contractual entitlements and obligations under state law.[31] In both circumstances, § 506 is inapplicable to the valuation of the 910 vehicle.

The issue presently before the Court, however, pertains to a non-910 vehicle: whether a debtor can surrender a non-910 vehicle pursuant to § 1325(a)(5)(C) in full

---

[27] *See Rash*, 520 U.S. at 962-63.
[28] 11 U.S.C. § 1325(a)(*); *In re Barrett*, 543 F.3d at 1242. "The section in question has been called the hanging paragraph because, although it is set forth as a subparagraph following 11 U.S.C. § 1325(a)(9), it is not separately designated by letter or number. Rather, it just 'hangs' without ordered designation and without surrounding context. It has been variously referred to by courts as Section 1325(a)(9), Section 1325(a)(*), and as a 'hanging paragraph.'" *In re Barrett*, 543 F.3d at 1241 n.1.
[29] *See, e.g., id.* at 1243.
[30] *Id.*
[31] *Id.* at 1246-47.

6

satisfaction of the debt, the value of which can be determined pursuant to § 506(a).[32] Appellant argues that the Bankruptcy Court erred in applying § 506(a) to value a non-910 vehicle surrendered by a debtor under § 1325(a)(5)(C).  Instead, Appellant contends that state law governs the rights and obligations of the parties because the Code is silent with respect to the valuation of a non-910 vehicle surrendered by a debtor.  In essence then, if the Court were to adopt Appellant's position, it would be treating non-910 vehicles surrendered under § 1352(a)(5)(C) as if they were 910 vehicles.  As discussed below, such a position is both contrary to pre-BAPCPA law and congressional intent.

Appellant first asserts that the Bankruptcy Court misinterpreted the Supreme Court's decision in *Associates Commercial Corp. v. Rash*,[33] a pre-BAPCPA case, by applying § 506(a) to valuation of surrendered vehicles when, as Appellant argues, the Supreme Court only espoused the applicability of § 506(a) to retained, not surrendered, vehicles.  The Court disagrees.

In *Rash* the Supreme Court considered the debtor's two choices under the Code, surrender or retention, and then considered the respective consequences of those choices on the secured creditor.[34]  If a debtor chose to surrender the property, the secured creditor would have liquidated the property and received the property's

---

[32] Although initially disputed in the lower court, it is undisputed that Appellee's surrender of the RV is governed by § 1325(a)(5)(C).
[33] 520 U.S. 953 (1997).
[34] *Id*. at 962-64.

liquidation, or foreclosure, value.[35]  Alternatively, if a debtor chose to instead retain, or use, the property, the secured creditor was exposed to "double risks," and consequently liquidation value would "[in]accurately gauge[ ] the debtor's use of the property."[36] Thus, in instances of retention, replacement value was the proper valuation standard.[37]

While the ultimate issue in *Rash* concerned the valuation of a retained vehicle, the Court nevertheless premised its conclusion on the distinction between the valuation of retained and surrendered property.[38]  In doing so, the Supreme Court implied the applicability of § 506(a) to surrendered vehicles.[39]  The Eleventh Circuit subsequently recognized this application, noting that "Section 506(a) applied to both retention and surrender of collateral pre-BAPCPA."[40]  Because nothing in BAPCPA changes the pre-BAPCPA practice with respect to non-910 vehicles, a point that Appellant does not dispute, the Court concludes that a debtor can use § 506(a) to value a non-910 vehicle upon surrender under § 1325(a)(5)(C).[41]

---

[35] *Id.* at 962-63.

[36] *Id.* at 963.

[37] *Id.* at 963-64.

[38] *Id.*

[39] *Id.*

[40] *In re Barrett*, 543 F.3d at 1242.

[41] *See, e.g., In re Long*, 519 F.3d 288, 293 (6th Cir. 2008) (noting that in pre-BAPCPA cases, "[t]he surrender of the collateral satisfied the allowed secured claim in full leaving the undersecured creditor with a deficiency that could only be asserted as a general unsecured claim"); *In re Harris*, No. 288-0020, 1989 WL 1717341, at *2 (S.D. Ga. Jan. 26, 1989) (noting in a pre-BAPCPA case that "[d]ebtors routinely propose to surrender collateral in full satisfaction of debt"); *In re Barclay*, 276 B.R. 276, 279 (N.D. Ala. 2001) ("Since the secured claim is based upon the value, any surrender would necessarily pay the secured claim in full."); *In re Johnson*, 247 B.R. 904, 906 (N.D. Ga. 1999).  Because the Court reaches the instant conclusion without regard to Appellant's argument that the Court mistakenly applied a Chapter 11 standard to a Chapter 13 case, the Court need not address Appellant's argument with respect to this point.

Moreover, the Court disagrees with Appellant that the Code is silent with respect to valuation of a surrendered non-910 vehicle. BAPCPA expressly sets forth the valuation method for a non-910 claim in Chapter 7 and 13 cases:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.[42]

Consequently, because the Code is not silent on the valuation of a surrendered non-910 vehicle, state law does not control.[43]

The Court's conclusion is consistent with Congress's intention in BAPCPA to protect 910 claims.[44] The hanging paragraph, which renders § 506(a) inapplicable to 910 vehicles, explicitly distinguishes between vehicles purchased within 910 days and vehicles purchased more than 910 days before filing bankruptcy.[45] Treating a non-910 vehicle as though it were a 910 vehicle ignores this explicit textual distinction and

---

[42] 11 U.S.C. § 506(a)(2).
[43] *See, e.g.*, *In re Butner*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").
[44] *See In re Dean*, 537 F.3d 1315, 1318 (11th Cir. 2008) (noting that Congress intended to protect 910 claims from the "abusive and unfair" practices resulting from cram-down).
[45] 11 U.S.C. § 1352(a)(5)(*) ("For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle … acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing."); *In re Dean*, 537 F.3d at 1318.

congressional intent to treat 910 vehicles differently.  In this respect, Appellant's argument that federal courts unanimously do not permit bankruptcy debtors from surrendering collateral in full satisfaction of a debt is without merit, as all the cases cited by Appellant concern 910 vehicles.[46]  The issue here is a non-910 vehicle, and consequently, those holdings are not controlling.

To the extent Appellant contends that § 506(a) does not apply because Appellant is in possession of the RV, this argument is also without merit.  Possession alone does not terminate the interest of the estate.[47]  Moreover, because the plan had yet to be confirmed, the applicability of § 506(a) is unaffected.[48]

### IV.   Conclusion

The Court, having reviewed the applicable law and the arguments of the parties, agrees with the decision of the Bankruptcy Court.  Accordingly, it is **HEREBY ORDERED** that the decision of the Bankruptcy Court be **AFFIRMED**.

**SO ORDERED,** this 21st day of June, 2013.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/bbp

---

[46] For a complete list of citations, see Appellant's Brief at 12-14 [Doc. 3].
[47] *See Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323, 1324 (11th Cir. 2004).
[48] *See* 11 U.S.C. § 506(a); *In re Simmons*, 765 F.2d 547, 553 (5th Cir. 1985); B.R. M.D. Ga. L.R. 3012-1.